SAVOIE, Judge.
Defendants-relators, A. Stirling Albritton and Hattie H. Box, Trustees on behalf of Alvin H. Albritton, seek supervisory writs from the refusal of the trial court to remove a notice of lis pendens filed by plaintiff-respondent, Alvin H. Albritton.
FACTS
Alvin R. Albritton, plaintiff’s grandfather, died on December 23, 1957. He bequeathed to his four grandchildren, including plaintiff, the naked ownership of an undivided one-fourth interest of his residuary estate. This interest was placed in an irrevocable testamentary trust with plaintiff’s father, A. Stirling Albritton, and uncle named as trustees; plaintiff’s father and uncle also received a lifetime usufruct over the property given to the grandchildren. The trust was to terminate in two stages: half of the corpus was to be distributed to the plaintiff and the other grandchildren on their twenty-first birthdays, and the other half on their twenty-sixth birthdays.[1]
*655 On September 21, 1972, plaintiff, appearing as settlor, executed a document whereby the term of the trust was extended for his lifetime. The document also provided that in the event this extension of the trust was deemed invalid, the plaintiff as settlor was placing “irrevocably in trust” as a “new trust” the corpus of the trust.
Plaintiff has filed suit naming as defendants the trustees; he seeks a declaratory judgment that the document he executed is without force and effect to either extend the testamentary trust or create a new trust, or alternatively, that any trust created by the document be terminated and annulled.[2] In connection with the suit, plaintiff filed a notice of lis pendens in the records of the East Baton Rouge Parish Clerk of Court’s office. Attached to the notice was a list of all the property owned by the trust in East Baton Rouge Parish. The lis pendens notifies third parties about plaintiffs lawsuit in which plaintiff alleges that the naked ownership of the trust property belongs to him and not to the trustees.
The trustees filed a motion to cancel the notice of lis pendens, which was denied by the trial court. From this denial, the trustees seek supervisory writs.
LEGAL ANALYSIS
The issues before this court are: (1) whether the notice of lis pendens is appropriate in this case relative to the rights of third parties dealing with property covered by the trust, and (2) whether the filing of the notice of lis pendens defeats or diminishes the effect of LSA-R.S. 9:2046(5).
LSA-C.C.P. arts. 3751 and 3752 reads as follows:
Art. 3751. Notice to be recorded to affect third persons
The pendency of an action or proceeding in any court, state or federal, in this state affecting the title to, or asserting a mortgage or privilege on, immovable property does not constitute notice to a third person not a party thereto unless a notice of the pendency of the action or proceeding is made, and filed or recorded, as required by Article 3752.
Art. 3752. Requirements of notice; rec-ordation
The notice referred to in Article 3751 shall be in writing, signed by the plaintiff, defendant, or other party to the action or proceeding who desires to have the notice recorded, or by a counsel of record for such party, showing the name of the court in which the action or proceeding has been filed, the title, docket number, date of filing, and object thereof, and the description of the property sought to be affected thereby.
This notice shall be recorded in the mortgage office of the parish where the property to be affected is situated, and has effect from the time of the filing for recordation.
The purpose of a notice of lis pendens “is to give effective notice to third persons of the pending of litigation affecting title to the property.” Karst v. Fryar, 430 So.2d 318, 320 (La.App. 3d Cir.1983), citing Dane v. Doucet Brothers Construction Co., 396 So.2d 418 (La.App. 4th Cir.1981). For a notice of lis pendens to be proper, the pending litigation must “affect the title to or assert a mortgage or privilege on immovable property.” Karst, 430 So.2d at 320. The notice is not concerned with the merits of the litigation prompting the notice. Abadie v. Oubre, 467 So.2d 1384, 1386 (La.App. 5th Cir.), writ denied, 472 So.2d 30 (La.1985).
The trustees contend that, plaintiffs lawsuit does not affect title to immovable property due to LSA-R.S. 9:2046, which reads in pertinent part as follows:
§ 2046. Effect of revocation or rescission
The settlor may stipulate the effect of revocation or rescission of a disposition. Unless the trust instrument otherwise provides, the following rules shall govern:
*656 (1) Revocation or rescission shall cause the trust to fail and the trust property held by the trustee at the time such revocation or rescission takes effect shall revert to the settlor or his heirs, legatees,. or assignees;
# * * # * #
(5) Acts of the trustee with regard to the trust property shall not be affected by the subsequent revocation or rescission of a disposition in trust. After a trust has been revoked or rescinded, the trustee shall have only those powers necessary to carry out the effects of the revocation or rescission.
The trustees contend that there is no need to notify third parties of the existence of litigation involving the legitimacy of the trust because LSA-R.S. 9:2046(5) allows third parties to rely on their dealings with the trustees until such time as the trustees are removed or the trust is revoked. To support this contention, the trustees refer to the comment to subsection (5) of LSA-R.S. 9:2046 which reads in pertinent part as follows:
Subsection (1) — was amended and subsection (5) was added by Acts 1974, No. 128 to make it clear that the trustee’s powers over the trust property are in no way limited by the fact that the trust may be revocable or subject to rescission in the future. So long as the trust has not been revoked or rescinded, third persons may rely upon the actions of the trustee as though the trust were irrevocable and not subject to rescission. Subsequent to revocation or rescission, the trustee may still exercise such powers as may be necessary to carry out its legal consequences. For example, the trustee of a revocable trust may convey good title to trust property until such time as the settlor revokes the trust. The revocation affects only the trust property to which the trustee has title at the time of the revocation.
We find that the trial court properly refused to cancel the notice of lis pendens. Plaintiff’s suit does affect title to immovable property: should the trial court revoke or terminate the trust, or declare it void ab initio, the plaintiff will become the naked owner of the trust property and the trustees will lose their title.[3] The whole object of plaintiff’s lawsuit is to have himself declared naked owner of the trust property-
While LSA-R.S. 9:2046(5) may protect a third party who deals with a trustee prior to a revocation, third parties are entitled to the notice which lis pendens affords them in order that they may determine the consequences of the pending litigation and of dealing with the trustee prior to a possible revocation. Since plaintiff is seeking that the trust be declared void ab initio, a third party is entitled to examine whether LSA-R.S. 9:2046(5) will apply to this case.
We also find that allowing the lis pen-dens to remain on the records does not diminish the effect of LSA-R.S. 9:2046(5). The lis pendens does not preclude third parties and trustees from entering into transactions involving the trust’s immovable property prior to a possible revocation of the trust.
For these reasons, the judgment of the district court maintaining the notice of lis pendens is affirmed at relator’s cost.
AFFIRMED.

. Plaintiff turned twenty-one on January 23, 1973, and twenty-six on January 23, 1978.

. Plaintiff alleges that he signed the document without the advice of counsel and on the basis of representations of his father.
Plaintiffs uncle resigned as co-trustee on November 30, 1982; on January 11, 1983, Hattie H. Box was appointed as successor co-trustee.

. In several cases the courts have removed a notice of lis pendens where the pending litigation did not affect title to immovable property. Settoon v. Settoon, 413 So.2d 634 (La.App. 1st Cir.1982) (husband filed suit against wife seeking reimbursement of value of improvements placed upon wife’s property); Martin v. Landry, 364 So.2d 178 (La.App. 1st Cir.1978), writ denied, 366 So.2d 563 (La.1979) (plaintiff filed suit seeking percentage of profits and accounting from defendants, which accounting might include mineral interests). See also Palmisano v. Lake Forest Boulevard Medical Development, 425 So.2d 905 (La.App. 4th Cir.1983).